■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBERTO BARRIERA, Appellant. [594 NYS2d 177] —Judgment, Supreme Court, New York County (James Leff, J.), rendered

January 16, 1991, convicting defendant, upon his plea of guilty, of two counts of criminal possession of a weapon in the third degree, and sentencing him to concurrent terms of two and one half to five years in prison, reversed, on the law and the facts, the plea vacated, the motion to suppress granted, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of a copy of this Court's order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

Defendant's appeal brings up for review the denial of his motion to suppress physical evidence seized at his arrest. At the hearing on the motion, Police Officer Jorge Alvarez testified that, on the night of February 9, 1990, he and his partner observed a car go through a red light at 138th Street and Broadway. The officers pulled the car over and approached it, whereupon the driver informed them that he had neither license nor registration and that the car had been rented by his brother. At this point, Alvarez noticed that, although both men were wearing jackets, there were two additional jackets on the back seat of the car, one of which had a Housing Police patch. According to Alvarez, he immediately became fearful for his safety because he was reminded of a "rash" of robberies in the area in which armed robbers had impersonated police officers. When asked to give details about the robberies, Alvarez was able to point to only one incident, two weeks earlier.

Alvarez' partner summoned assistance and almost immediately, they were joined by Officers Setteducato and Parsons. According to Setteducato, he also knew of past robberies in the area which, he recalled, involved "multiple" defendants who were either Hispanic or black. At that point, the two men were ordered out of the car and immediately frisked. The frisk of defendant, who had been the passenger in the car, produced two loaded handguns, and that of the driver also produced a loaded gun.

Upon this evidence the court declined to suppress the weapons. Because the police officers' observations fall short of meeting the legal prerequisite for the frisk of defendant and the operator of the car, i.e., reasonable suspicion to believe that they had committed, were committing or were about to commit a crime, suppression should have been granted.

Preliminarily, we note that there is no issue that the police properly stopped the car, whose driver had been observed committing a traffic infraction *(People v Ellis,* 62 NY2d 393, 396). The People maintain that the additional circumstances which came to light after the car was stopped, i.e., the driver's lack of license or registration, the Housing Police emblem on a jacket in the back seat and the knowledge of recent robberies involving police impersonation, were sufficient to justify a request that the men exit the car and a frisk for weapons.

However, while the extraordinary vulnerability of the police in confronting occupants of a car has been held to justify the officers in ordering the occupants of a car which has been lawfully stopped for a traffic infraction to leave it *(People v Robinson,* 74 NY2d 773, *cert denied* 493 US 966; *People v Rodriguez,* 167 AD2d 122, *lv denied* 77 NY2d 843)\* once those persons have left the car, the parties are in the same position as exist in any street encounter. In this situation, the standard for justifying a frisk is well established, i.e., the police must have at least a reasonable suspicion to believe that the individual has been or is about to be involved in criminal activity and a concomitant reasonable fear that the individual is armed (CPL 140.50; *Terry v Ohio,* 392 US 1; *People v De Bour,* 40 NY2d 210, 233). In this case, we do not find that such suspicion existed at the point the frisk was conducted.

In reaching this conclusion, we initially note that the circumstances prior to the stop itself justified no suspicion of criminal activity on the part of either occupant other than failure on the driver's part to obey the red light. The car was not speeding or being driven in an erratic manner, and the driver responded promptly to the order to stop. Moreover, the information gained upon stopping the vehicle did not create such a suspicion. The driver offered in explanation for his lack of registration that the car was rented, as to which the officers made no further inquiry and made no request to see the rental documents. Furthermore, the officers' testimony indicated that the car's registration and license plate number supported the statement that it was rented, thereby explaining the driver's failure to carry the registration. While the driver also apparently failed to produce a license, on the record herein, it appears that no further inquiry was made

---

\* Since it was not specifically addressed by defendant and since, in any case, we are suppressing the evidence on other grounds, we do not reach the issue, left unresolved by the Court in *Robinson (supra),* of the level of suspicion required under the New York State Constitution before the police may order the passenger in a legally stopped car to leave it.

concerning this failure and no claim was ever made that the officers intended to remove the driver to the station house in order to identify him and serve him with a summons (cf., People v Ellis, 62 NY2d 393, 396, supra). In any case, this failure on the part of the driver did not support any inference concerning defendant.

The primary evidence to which the People point in supporting their argument is the presence in the car of a jacket bearing a Housing Police emblem, along with the fact that two of the officers knew of robberies in which persons had impersonated police officers. However, the presence in the car of such a jacket, on its own and without any further inquiry, was clearly inadequate to support a reasonable suspicion that the two men had committed the prior crimes (see, People v Harrison, 57 NY2d 470). The officers testified to no other details concerning the robberies which might have linked the defendants to them other than the very general information that the robberies had been committed by multiple black or Hispanic men. While the officers' conjecture that there could be a connection between the jacket and the past robberies represented a basis for further inquiry, it did not provide a predicate for reasonable suspicion to believe that the defendant had been or was about to be involved in criminal activity or that the men were armed, thereby justifying a frisk. Under such circumstances, the complete failure to make any inquiry of the occupants of the car before the substantial intrusion of a frisk was imposed upon them was improper. Concur—Sullivan, J. P., Milonas and Ellerin, JJ.

Kassal, J., dissents in a memorandum as follows: I dissent and would affirm the judgment.

Officer Alvarez and his partner were on routine motor patrol when they observed an auto being driven through a red light in the area of 138th Street and Broadway in Manhattan. Officer Alvarez stopped the vehicle and asked the driver, Martinez, for his license and registration. Martinez had neither and told Officer Alvarez that the car had been rented by his brother. Officer Alvarez testified that he became "very suspicious" and felt threatened when he saw two blue jackets in the back seat of the car, one having a Housing Police patch on the left breast pocket, and recalled there had been a "rash of push-in" police impersonation robberies in that immediate area. In fact, two weeks prior to this occurrence, he had personally taken such a complaint about a push-in robbery at 138th Street, between Broadway and Amsterdam Avenue and made a report. As evidence of this fear for his safety, he

motioned to his partner to look at the jacket and to call for "an 85-police assistance" back-up. When further questioned, he said he felt threatened at that point because "push-in robberies were heavily armed".

No further action occurred until the back-up police team, Officer Setteducato and his partner, arrived at the scene in "less than a minute". Upon seeing the coat and police patch, Officer Setteducato testified he became suspicious because he also knew about "push-in" robberies in that area and neighboring precincts and he had personally taken reports of two of such robberies.

Martinez was then ordered out of the vehicle and frisked, which frisk produced a loaded .38 caliber gun, a clip for an automatic handgun as well as several live rounds of ammunition. Thereupon, the defendant was ordered out of the vehicle and frisked, and found to possess two guns.

The court credited the testimony of Police Officer Alvarez that he feared for his safety upon seeing the coats, which was confirmed by his immediately calling for assistance. The court further noted that criminal impersonation is a crime, citing Penal Law § 190.26 (1), which states that one is guilty of criminal impersonation when a person "[p]retends to be a police officer, or wears or displays without authority, any uniform, badge or other insignia * * * by which such police officer is lawfully distinguished".

Thus, as found by the hearing court, there was a reasonable suspicion that the occupants of the vehicle were guilty of the crime of criminal impersonation. Moreover, the officers articulated a reasoned basis for fearing for their safety. Accordingly their frisk of the defendant and his companion was justified since they reasonably believed they were "in danger of physical injury" (CPL 140.50 [3]).

The court so determined, fully believing the testimony of Police Officers Alvarez and Setteducato. There is nothing in the record to warrant setting aside the hearing court's assessment of the witnesses' credibility, which should be upheld unless clearly erroneous, improbable or incredible (People v McCormick, 162 AD2d 878, 879, lv denied 77 NY2d 841). "A hearing court's findings of fact are entitled to great weight [citations omitted], and this court will not, without good reason, find a police officer's testimony incredible or patently tailored to overcome constitutional objections" (People v Jones, 168 AD2d 370, lv denied 77 NY2d 907).

There is no basis for rejecting the hearing court's determination.